United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ESTATE OF RANDY L LOPES,

        Plaintiff,

    v                                  No C 04-5379 VRW

JO ANNE B BARNHARDT,                ORDER
Commissioner of Social Security,

        Defendant.
_____/

        This social security appeal under 42 USC § 405(g) seeks review of a decision by the Social Security Administration (SSA) following this court's remand in case No C-01-0954 VRW, Lopes v Barnhart. Upon remand, the SSA established for the second time a disability onset date of December 17, 1996 for claimant Randy L Lopes ("Lopes").

        On September 25, 1998, an Administrative Law Judge ("ALJ") approved Title XVI supplemental income benefits and denied Title II disability insurance benefits. Administrative Record ("AR") (Doc #8) at 24-25. The denial was based on a finding that Lopes's disability had commenced on December 17, 1996, but that his

insurance had expired some nine months earlier, in March 1996, making him ineligible for Title II benefits. Following Lopes's appeal from that decision, this court remanded the case to the SSA to redetermine the onset date with help of a medical examiner. AR at 519:14-16. On remand, the ALJ held a further hearing on December 2, 2003, and again found Lopes not to have been disabled before December 17, 1996. Id at 434. By then, Lopes was deceased. His estate (the "Estate") appealed. Doc #1.

The parties have filed cross-motions for summary judgment. Doc ## 9, 10. For the reasons stated herein, the court DENIES plaintiff's motion and GRANTS defendant's motion.

I

A

The following facts come from the parties' submissions and are undisputed. In January 1994, Lopes was released from jail because he had thrombocytopenia — a condition in which a low blood platelet count hinders blood clotting - and tested abnormally on a liver test and positive for hepatitis C. AR at 570:14-571:1. From January 1994 to July 1994, Lopes received care from Marin Community Clinic ("MCC") for chronic active hepatitis B and C, early cirrhosis, diarrhea and thrombocytopenia. Id at 383-89. On referral from MCC, doctors at the University of California, San Francisco Liver Clinic diagnosed Lopes with hepatitis C and cirrhosis. Id at 290, 405-08. The record contains several sets of liver test results from 1994. Id at 378, 379-80, 381, 389, 400-01, 398-99, 405, 340. These results are presented in tabular form below.

**1994 Liver Test Lab Results**

| Date | 1/5 | 1/19 | 1/22 | 1/31 | 2/15 | 3/3, 3/17 | 4/26 | 7/18 |
|---|---|---|---|---|---|---|---|---|
| Source | Jail lab | Jail lab | Jail lab | MCC lab | MCC clinic notes | MCC lab, clinic notes | UCSF clinic notes | MCC clinic notes |
| SGOT/AST | 120 | 191 | 108 | 131 | 131 | 100 | 120 | 124 |
| SGPT/ALT | 155 | 142 | 138 | 125 | 125 | 123 | 160 | 108 |
| ALK PHOS | 269 | 220 | 223 |  | 236 | 267 | 269 |  |
| Bilirubin/T-bili (mg/dl) | 1.2 | 1.3 | 1.2 | 1.8 |  | 1.6 | 1.6 | 2.2 |
| D-bili |  |  | 0.8 |  |  | 0.8 |  |  |
| Albumin/ALD (mg/dl) | 3.2 |  | 2.8 |  |  | 3.1 | 3.1 |  |
| Glob/GLLB | 3.9 | 3.3 | 3.7 |  |  | 3.9 |  |  |
| Platelets/PLT | 63 | 63 |  | 73 | 72 | 56 | 63 | 60 |

According to the record, Lopes did not visit doctors in 1995, when he was working as a building maintenance worker. But in February 1996, Lopes resumed liver care at MCC after an emergency room visit prompted by a sprained foot. AR at 237. Lopes's three 1996 test results show his bilirubin level more or less steady at 1.7 mg/dl and his albumin level increasing from 3.1 to 3.3 mg/dl. Id at 241, 244, 276. In July 1997, Lopes's bilirubin was 2.8, and his albumin was 3.1. Id at 261. Although he visited the doctor at least six times in 1997, the sole set of blood test results was dated March 1997 and did not include bilirubin or albumin levels. Id at 272.

In response to Lopes's report of impaired concentration and memory loss, the SSA ordered psychological evaluations. Id at

3

173. Dr Peter Solon, a psychologist, diagnosed Lopes with adjustment disorder with chronic depressed mood and assigned Lopes a Global Assessment of Functioning score of 40 in April 1997.  AR at 208.  His report stated, "[f]rom a purely psychological point of view, the overall clinical presentation is a reactive depressive disorder secondary to the presence of a chronic medical illnss (Hepatitis A, B and C)."  Id.  In June 1997, Dr Ida Hilliard, a psychiatric medical consultant, confirmed the diagnosis of adjustment disorder with depressed mood.  Id at 221, 235.

        The SSA also ordered two residual physical functional capacity assessments in February and June 1997.  Id at 198, 213.  Both assessments showed that Lopes could do light work.  Id.  On the other hand, a medical assessment of ability to do work related activities, apparently from MCC in late 1997, showed that Lopes could do only sedentary work.  Id at 305-08.

        Lopes died on October 30, 1998.  Id at 561.  According to the death certificate, Lopes died of cardio-respiratory arrest, hepatorenal syndrome, liver failure, cirrhosis and hepatocellular cancer.  Id.  The death certificate stated that he had suffered from the latter four conditions for four years.  Id.

B

        Lopes submitted two different claims for social security benefits, in 1994 and 1996. First, on April 22, 1994, Lopes applied under Title XVI of the Social Security Act, 42 USC §§ 1381-83(d), for supplemental security income disability benefits ("1994 claim").  Id at 321-23.  After the SSA denied both his initial application and his reconsideration request, Lopes

4

requested a hearing before an ALJ. Id at 345. An ALJ heard Lopes's claims and issued a partially favorable decision on August 21, 1995 ("1995 decision"), finding that Lopes had been disabled for a closed period from November 15, 1993, to November 15, 1994. Id at 75-80. The ALJ found that Lopes was not disabled after November 16, 1994, because the medical evidence showed – and Lopes conceded – that "his medical condition significantly improved," so much so that he began working again as a building maintenance worker during the last week in November 1994. Id at 78. Lopes did not appeal the 1995 decision. Lopes stopped working in October 1995 when he was laid off. Id at 443, 566:22-23.

On December 17, 1996, Lopes applied for Title II and Title XVI social security benefits, alleging that he was disabled by cirrhosis of the liver and hepatitis A and C as of February 13, 1996 ("1996 claim"). Id at 123, 134. After the SSA denied both his initial application and his reconsideration request, Lopes requested a hearing before an ALJ. Id at 93. After the April 20, 1998 hearing ("1998 hearing"), at which Lopes, his attorney and a vocational expert ("VE") appeared, the ALJ issued a partially favorable decision ("1998 decision"), finding Lopes disabled from December 17, 1996 forward, but not before. Id at 31, 19. The ALJ also found Lopes not entitled to Title II disability insurance benefits because his disability onset date of December 17, 1996, postdated by nine months the March 1996 expiration of his Title II insurance. Id. The ALJ found that Lopes's laboratory results did not meet the criteria established in 20 CFR Pt 404, Subpt P, App 1 ("Listings") for impairments based on chronic liver disease and Lopes had the residual functioning capacity ("RFC") to perform

5

1  sedentary work between February and December 1996.  Id at 19-20.
2  After December 1996, however, the AlJ found, Lopes's medical and
3  mental condition deteriorated so that he no longer could do even
4  sedentary work.  Id at 21-22.  Lopes appealed to the Appeals
5  Council but died shortly thereafter on October 30, 1998.  Id at 13-
6  14, 561.  After the Appeals Council declined review and the
7  decision became final, Lopes's Estate filed a timely appeal to this
8  court challenging the December 1996 onset date.  Id at 576.

9          In that appeal (docket #C 01-0954 VRW), the Estate
10 contended that either:  (1) the 1995 decision was reopened in the
11 1998 hearing and must be readjudicated or (2) the 1998 decision
12 must be remanded.  AR at 576.  In an order dated March 31, 2003,
13 this court granted the defendant's motion for summary judgment on
14 three issues:  (1) the ALJ did not controvert Acquiescence Ruling
15 97-4(9); (2) the ALJ's 1998 decision did not constitute a <u>de facto</u>
16 reopening of the 1995 decision; and (3) the court lacked
17 jurisdiction to reconsider the 1995 decision because Lopes had not
18 exhausted his administrative remedies.  Id at 515:21-23, 518:23-
19 519:1.  This court granted the Estate's motion for remand on one
20 issue:  that the ALJ did not properly determine Lopes's disability
21 onset date under the Social Security Ruling 83-20, which sets forth
22 how the onset date of disability is to be determined for
23 disabilities of non-traumatic origin.  Id at 517-18; SSR 83-20.
24 The court reversed and remanded the case for the ALJ to "review,
25 pursuant to SSR 83-20, with the assistance of a medical advisor,
26 whether substantial evidence supports plaintiff's claimed
27 disability onset date of February 13, 1996."  Id at 519:15-20:2.
28 \\

6

1    On remand, the ALJ enlisted the help of a medical
2 examiner.  At the hearing on December 2, 2003, plaintiff's attorney
3 and a VE appeared in person, while Dr Sergio Bello, a medical
4 expert ("ME"), appeared by phone.  Id at 625.  At the request of
5 plaintiff's attorney, the ALJ read to the ME three sets of liver
6 test results from 1994:  those from January 22, March 17 and April
7 26.  See table in Part I.A, supra.  The ALJ then asked on the
8 record whether any other medical evidence should be included:

> ALJ:  I did have a question for you, counsel.  And
> that was was there any other medical evidence that
> you wanted included in the file?
>
> ATTY:  No, none.  That's the — the readings that we
> just went through are sufficient.
>
> ALJ:  All right.

14 AR at 633.

15    The medical evidence of record afforded the ME, to quote
16 the ALJ, a "very small window of insight," id at 431:  "You know,
17 it's a very small window of impression * * * basically a one and a
18 half, maybe two-year period, it doesn't give me any indication
19 about anything was severe at that point [sic].  But it also doesn't
20 tell me what happened beyond that."  Id at 635.  The ME considered
21 the 1994 and 1996 test results and concluded that the 1994 results
22 "would not have been bad enough" to meet any of the Listings for
23 liver disease and the 1996 results are not "very significant."  Id
24 at 643.  The ME could not determine, based on the available medical
25 information, whether Lopes had even a severe impairment from
26 February 13, 1996, to December 17, 1996.  Id.  Looking at the July
27 1996 laboratory report showing elevated bilirubin, the ME said that
28 Lopes would have met the Listings then if he also had ascites or

7

esophageal bleeding, but the CT scans and other medical records showed neither. Id at 638-40. The ME noted that Lopes was prescribed a medicine for ascites. Id at 640. Because Lopes never had a biopsy but clearly had chronic liver disease, the ME decided that Lopes's condition on July 2, 1997, probably equaled a Listing with a "ramping up period" of one to six months. Id at 642-44. The ME opined that between February and December 1996, Lopes had the RFC to perform light work. Id at 645.

The ALJ then posed to the VE two sets of functional limitations: the ME's recommended "light work" RFC and a more limited sedentary work RFC based on both the 1998 decision and a doctor's report from late 1997. Id at 660-61, 432, 305-08. The VE identified, under each RFC, jobs existing in significant numbers in the national and regional economies that Lopes could have performed. Id at 661-62.

The ALJ issued a decision on December 8, 2004 ("2004 decision") and found that: (1) Lopes "had the severe impairments of hepatitis A, B and C with early stages of cirrhosis; obesity; and an adjustment disorder with depression, severe since December 17, 1996"; (2) Lopes's "impairments did not meet or equal any impairment in the Listing of Impairments at 20 CFR, Part 404, Subpart P, Appendix 1"; (3) between February 13, 1996, and December 17, 1996, Lopes could not perform past relevant work, but could perform sedentary work identified by the VE; (4) Lopes was not disabled under the Act and Regulations prior to the expiration of his Title II insured status. Id at 434-35. To determine the disability onset date, the ALJ relied on the ME's testimony that stated Lopes did not meet or equal any Listings from February 13,

8

1996, to December 17, 1996, and the VE's testimony that sedentary work was available to Lopes.  Id at 432-33.  The ALJ concluded that Lopes was therefore not eligible for disability benefits under Title II.  Id at 435.

## II

### A

The court's jurisdiction is limited to determining whether the SSA's denial of benefits is supported by substantial evidence in the administrative record.  42 USC § 405(g).  Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Thomas v Barnhart, 278 F3d 947, 954 (9th Cir 2002).  The ALJ's conclusion must be upheld where it is free of legal error and the evidence is susceptible to more than one rational interpretation.  Id.  Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ.  Morgan v Commissioner of Social Sec Admin, 169 F3d 595, 599 (9th Cir 1999); Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995).

"Disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  A person with chronic liver disease is disabled if he has (1) documented esophageal varices; (2) serum bilirubin of 2.5 mg per deciliter or greater, on repeated tests over five

9

months; and (3) ascites recurring or persisting for at least five months associated with persistent hypoalbuminemia of 3.0 gm per deciliter or less. Listings § 5.05 A, C, D. If the chronic liver disease is confirmed with a liver biopsy, then the duration requirements above are reduced to three months. Id, § 5.05 F.

B

By this appeal, the Estate challenges the disability onset date of December 17, 1996, seeking instead a date at least ten months earlier that would place the onset date just before the expiration of Lopes's Title II insurance status. Lopes Br at 9:6-8. Specifically, the Estate argues that the ALJ erred by (1) failing to follow the law of the case; (2) misconstruing and misapplying the "relevant period" of the case and the law; (3) failing to consider "all evidence" as required by CFR § 404.1520(a)(3); (4) failing to acknowledge and analyze the combined effect of Lopes's impairments; and (5) giving an improper hypothetical to the VE. Lopes Br (Doc #9) at 2:12-14, 5:7-19, 13:20-24, 14:12-14.

1

The Estate asserts that the ALJ did not abide by the "law of the case" regarding the 1994 medical evidence. The "law of the case" doctrine requires the trial court to "follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case; the doctrine does not apply to issues not addressed by the appellate court." United States ex rel Lujan v Hughes Aircraft Co, 243 F3d 1181, 1186 (9th Cir 2001). The Estate relies on a discovery order in the first appeal, in which this

1 court ordered the defendant to produce medical records supporting
2 the 1995 decision. Docket #C 01-0954 VRW, Doc # 13. This court
3 stated, "[t]he court is, indeed, convinced that Plaintiff's medical
4 records from the transcript supporting ALJ Ball's decision are
5 relevant to the instant matter." Id at 2. The Estate argues that
6 this statement required the ALJ to review all of the 1994 evidence.
7 Lopes Reply (Doc #11) at 6:20-7:8. The court disagrees.

        The discovery order addressed whether medical evidence
supporting the 1995 decision was discoverable. The quoted sentence
and its surrounding passages addressed the relevance of the medical
records to that appeal and whether their production would be unduly
burdensome. Because application of the doctrine is limited to the
explicit issue decided, the quoted statement did not require the
ALJ in 1998 to evaluate all of the evidence since November 15,
1993. See <u>Resolution Trust Corp v Massachusetts Mut Life</u>, 200 FRD
183, 187 (WDNY 2001) (applying law of the case doctrine only to the
explicit issue decided in the discovery order). Accordingly,
this court's discovery order is irrelevant to the merits of the
instant appeal.

2

        Next, the Estate argues that the ALJ's determination of
the disability onset date was based on improper relevant periods
because: (1) SSR 83-20 requires the use of the date Lopes stopped
work as the beginning of the relevant period or (2) 42 USC
§ 423(a)(1)(D) and accompanying regulations require the use of the
onset date set from the 1995 decision as the beginning of the
relevant period. Lopes Br at 5-6. Neither argument is persuasive.
\\

Social Security Ruling 83-20 establishes the framework for determining the disability onset date. For a disability of non-traumatic origin, the ALJ starts the analysis with the claimant's statement as to when the disability began, then factors in the date the impairments caused the claimant to stop work and the dates supported by medical and other evidence. SSR 83-20. In this case, the October 1995 date when Lopes last worked did not enter into the analysis because he did not stop work due to the impairments. Lopes Reply at 5:8-9. The ALJ must then start the analysis with February 13, 1996, Lopes's alleged onset date, and factor in the dates supported by the evidence. The relevant period of February 13, 1996, based on alleged onset of disability, to December 17, 1996, the date of the application, was proper because the medical evidence did not support an earlier date. AR at 643.

Alternatively, the Estate argues that the relevant period should be framed from the perspective of reinstating the 1994 claim. Lopes Br at 6:15-7:8; Lopes Reply at 5:21-6:20. None of the authorities it cites supports this argument. 42 USC § 423(a)(1)(D) (disability insurance benefits only individual who applies); 20 CFR §§ 404.250, 404.252 (special computation of benefits for those entitled to benefits a second time); 20 CFR § 404.315(a)(4) (waiting period is waived for those previously entitled to disability benefits); 20 CFR § 404.1592(d)(2)(ii) (no trial work period for those who performed work demonstrating the ability to engage in substantial gainful activity during any required waiting period). Further, reinstating the 1994 claim would require reopening that decision, something which this court has no subject matter jurisdiction to do. AR at 518:26-519:1.

3

The Estate also argues that the ALJ misconstrued and misapplied 20 CFR § 404.1520, which requires consideration of "all evidence."  20 CFR § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled").  The Estate argues that the 1994 medical records are part of the evidence and must be considered.  Lopes Br at 7:9-20.  Evidence is anything the claimant submits that relates to the claim.  20 CFR § 404.1512(b).

Before it makes a determination that a claimant is not disabled, the SSA develops the claimant's "complete medical history" for at least the twelve months preceding the month of application or, if applicable, the twelve months before the date last insured.  20 CFR § 404.1512(d)(2).  Using the latter window for Lopes's case, the "complete medical history" would include records back to March 1995.  The twelve-month window relates directly to 42 USC § 423's definition of "disability," which has a twelve-month duration component.  Given that the Listing for liver disease requires blood tests establishing certain levels for a five-month duration up to the disability onset date and that the 1994 data do not establish these levels, the Estate's argument that the 1994 records were essential is untenable.

In any case, the ALJ did consider some of the 1994 medical data, those the Estate considered most helpful to its case.  The ALJ read three of the eight sets of 1994 data to the ME at the hearing and verified with the Estate's attorney that the ones she read were sufficient.  AR at 632-33.  The ME concluded that Lopes did not meet the Listings based on the 1994 data.  Id at 643.  The

13

Estate now argues that the excluded 1994 data would have led the ME to determine an onset date of February 13, 1996, or to corroborate the four-year duration of illness on the death certificate. Lopes Br at 9:13-12:9. Given that the three data sets were chosen by Lopes's counsel and the omitted test results were not more favorable to Lopes's position, the court cannot see how the inclusion of the other sets could have changed the ME's conclusion. Lopes Br at 12:1-19. The ALJ's decision to include only a representative portion of the 1994 data was not legal error and would not have changed the result. Moreover, this was agreed to by the Estate's counsel on the record. The Estate's request to remand for the inclusion of more 1994 data is, therefore, denied.

4

The Estate argues that the ALJ did not consider the combined effects of Lopes's impairments, including hypertension, stab wound, chronic sinusitis and obesity, as required by 20 CFR § 404.1520(a). Lopes Br at 14:9-11. Under this section, the ALJ must "explain adequately his evaluation of alternative tests and the combined effects of the impairments." Marcia v Sullivan, 900 F2d 172, 176 (9th Cir 1990).

In two recent opinions, the Ninth Circuit has explored the scope of an ALJ's responsibility for determining the effect of obesity upon a claimant's other impairments and on the ability to work and general health. In Celaya v Halter, 332 F3d 1177, 1182 (9th Cir 2003), the Ninth Circuit found the ALJ's exclusion of the plaintiff's significant obesity from a multiple factor analysis to be error and remanded to the ALJ. Id at 1182, 84. The court found especially significant that the obesity was implicit in Celaya's

report of symptoms; that the obesity was at least close to the Listing and could exacerbate the plaintiff's reported illnesses; and that the ALJ's observation of Celaya and the information in the record should have alerted the ALJ to the need to develop the record, stressing the plaintiff's pro se status.  Id at 1182.  In its more recent opinion in Burch v Barnhart, however, the Ninth Circuit clarified that the ALJ did not have to discuss the combined effects of impairments unless the claimant presented evidence that the combined impairments would equal a Listing.  400 F3d 676, 683 (9th Cir 2005).  In Burch, the Ninth Circuit distinguished Celaya because Burch was represented by counsel and the record did not indicate that the claimant's obesity exacerbated other impairments. Id at 682.

In addressing Lopes's multiple impairments, the ALJ concluded, "[c]laimant's impairments considered singly or in combination did not meet or equal any impairment in the Listing of Impairments at 20 CFR, Part 404, Subpart P, Appendix 1."  Id at 432.  Under Burch, the ALJ did not have to discuss the combined effects of impairments unless the Estate presented evidence that the combined impairments would equal a Listing.  No such evidence was presented for hypertension, stab wound, chronic sinusitis and obesity.

The Estate relies on Celaya for the proposition that it is the ALJ, not the plaintiff, who must develop the record as to the effects of multiple impairments.  Unlike the plaintiff in Celaya, who was illiterate and appeared pro se, the Estate was represented by counsel who made no reference to the obesity, stab wound and/or sinusitus.  Just as in Burch, in which the Ninth

15

Circuit distinguished Celaya, the record is similarly lacking in evidence that the hypertension, stab wound, chronic sinusitis and/or obesity either exacerbated the other impairments or nearly met or equaled a Listing, as did Celaya's obesity.

The Estate has, moreover, not pointed to any evidence in the record of functional limitations imposed by Lopes's hypertension or stab wound during the relevant period. Reports of functional limitations imposed by obesity and chronic sinusitus are dated in late 1997, well after the relevant period. AR at 280 (letter dated October 10, 1997, from Dr Shapiro re: chronic sinusitus); id at 305 (undated medical assessment faxed from MCC on December 5, 1997). The Estate does not address how the existing evidence would support a multiple factors determination or how it could change the outcome. Lopes Br at 14:9-11. Without evidence in the case record that these impairments limited Lopes's functioning during the relevant period and would combine to equal a Listing, the ALJ did not err by not explicitly analyzing these impairments.

5

Finally, the Estate argues that the hypothetical given to the VE was improper because the ALJ did not perform the "multiple factors" determination. Having found a multiple factors determination unnecessary, the court concludes that the hypothetical is proper because it refers to a RFC supported by substantial evidence in the record. In determining RFC, the ALJ must consider only limitations and restrictions imposed by all of the impairments, even those that are not severe. SSR 96-8p.

\\

1    Relying on the ME's testimony, Dr Sommer's medical
2 assessment and Dr Shapiro's letter, the ALJ found that Lopes had
3 the RFC to lift ten pounds occasionally, stand and walk about two
4 out of eight hours per day and sit about six out of eight hours per
5 day.  Id at 432, 34.  The testimony and reports together included
6 complete consideration of Lopes's mental condition, chronic
7 sinusitus, obesity, and liver diseases.  Id at 280, 305, 645.  The
8 ALJ's RFC determination is supported by substantial evidence.

### III

In conclusion, the court GRANTS defendant's motion for
summary judgment and DENIES plaintiff's motion for summary
judgment.  The clerk is directed to enter judgment in favor of the
defendant, to close the file and to terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge